Our next case on the call of the docket is Agenda No. 2, Case No. 112938, People v. Lamar Wilmington. Counsel for the appellant, please proceed. Good morning, Your Honors, Counsel. May it please the Court, my name is Brian Cook, and I represent the appellant Lamar Wilmington. If time permits, I'd like to discuss both of the issues that were raised in our brief, and I would like to start with the first issues, but I'm, of course, willing to answer any questions that Your Honors might have about either issues at any time. Lamar was convicted of first-degree murder after a trial at which defense counsel undermined Lamar's strong defense of this charge by requesting an instruction on second-degree murder and then arguing that offense as an alternative to finding Lamar not guilty of first-degree murder. This led to a reversible error because the trial judge did not determine, as required by this Court's precedence, whether Lamar agreed with the submission of the instruction and understood its consequences. This Court held in People v. Brocksmith that a defendant has the right to decide whether to submit an instruction on a lesser-included offense, and it is also held in People v. Medina that when defense counsel makes such a request, the judge must question the defendant and defense counsel to determine whether the defendant agrees with the submission and understands its consequences. These rules are even more necessary in a case such as this, in which counsel requests an instruction on the lesser-mitigated offense of second-degree murder, because the consequences in this case are far more severe than when counsel merely requests an instruction on a lesser-included offense, and that's because of two important differences between lesser-mitigated offenses and lesser-included offenses. With a lesser-included offense, the lesser offense includes only some of the elements of the greater offense, but with a lesser-mitigated offense, such as second-degree murder, as in this case, all of the elements of the greater offense of first-degree murder are part of the offense of second-degree murder, and in addition, the defendant then also has the burden of proving a mitigating factor that would reduce the offense of first-degree murder to second-degree murder. And that kind of leads to the second reason that it's even more important for the defendant to decide and to be questioned by the judge about an instruction on second-degree murder, and that's because when the defense requests such an instruction, the defense is affirmatively taking on the burden of proving that mitigating factor. With a lesser-included offense, the defense bears no burden of proving any part of that offense, but with second-degree murder, the defense does bear a burden, and the jury is instructed as such. To make this maybe perhaps a little less abstract, if you were to consider a case, compare involuntary manslaughter to second-degree murder. Involuntary manslaughter is a lesser-included offense of first-degree murder, and under this Court's precedence, if a defendant charged with first-degree murder requests an instruction on involuntary manslaughter, the defendant would have to be admonished about that by the judge. Involuntary manslaughter, though, is a far less severe offense than second-degree murder. It's a Class III offense punishable by three to five years in prison, whereas second-degree murder is a Class I offense that's punishable by four to 20 years in prison. So for those reasons, we believe that the rules set out by this Court in Brock, Smith, and Medina should be extended to the lesser- included offense. The next question, then, would be whether or not the judge's failure to comply with those rules is reversible error under the plain error doctrine. This was an error that was forfeited by the defense at trial. There was no objection at the jury instructions conference when the judge failed to question Lamar about the submission of the instruction, nor was it included in the post-trial motion. However, under both prongs of the plain error doctrine... I believe under Brock, Smith, and Medina, I don't think those holdings weren't conditioned on what defense counsel argues later in the trial. Once defense counsel requests the instruction under Medina, the judge has an obligation to question the defendant. The content of the arguments, I think, is more of a question of whether the error then becomes reversible. I think it does have a bearing on prejudice. So in a case like this, when we're analyzing it under the closely-balanced evidence prong, the fact that counsel argued this as an alternative is pertinent to determining whether the error by the judge might have affected the outcome of trial. Because we do have a case here, well, we do have a close case. The state's case depended essentially entirely on the statement that Lamar allegedly made to the police. There was no physical evidence here, such as DNA or a gun that was recovered or fingerprints or anything of that nature to corroborate the confession. There were no eyewitnesses to the shooting itself or to the disposal of the body. Just Lamar's statement. And there were good reasons to doubt the reliability of that statement. Didn't the defendant request a self-defense instruction here? That's correct, Your Honor. And haven't we said in People v. Washington that a second degree or a murder or two normally flows from that? That's correct. Recently in People v. Washington and previously in People v. Lockett, this Court has said that when the defense requests an instruction on self-defense and there is sufficient evidence for that instruction, then if the defense also requests an instruction on second degree murder, then logically if there's enough proof of actual self-defense, then there would also be slight evidence of imperfect self-defense. But not on second degree murder. But I would make it clear that just because a judge gives an instruction on self-defense, the judge is not obligated on his own to give an instruction on second degree murder. That obligation only arises if the defense requests the instruction. This Court and the appellate court have never held, whether we're talking about second degree murder or any lesser offense, that a judge ever has an obligation to sua sponte, instruct a jury about an instruction. That obligation flows from a defense request. But the trial court has the opportunity to instruct. And in this case, I believe the facts were that the court had indicated it wanted a self or a murder two instruction submitted. Everything that the trial judge said about second degree murder indicated that the judge was acting pursuant to a defense request. If I can quote from the actual jury instructions conference, the judge said, I instructed the state to prepare a set of instructions with second degree and involuntary manslaughter at your request, Mr. Kennelly, who was defense counsel. And then the judge later went on to say, if I can find it. Later after, defense had also requested involuntary manslaughter instruction. That was rejected based on there being insufficient evidence for that. Then the judge said, however, I have considered the evidence in this case and you also requested, referring to defense counsel, that I give second degree murder. And then the judge found that he would grant that request. The judge never said anything to indicate that he would have given this instruction had defense counsel not requested it. What do we do in a situation where the court gives the instruction, is there an obligation then to, I mean, why would he have to caution the defendant about giving it if the court is going to give it anyway? If the court were in his discretion to give an instruction that the defense wasn't requesting, then there would be no obligation under Medina to admonish the defendant. That obligation stems from a situation only in which the defense is the party requesting the instruction. And the reason is because if it's the defense requesting the instruction, in those circumstances the defendant essentially has a veto over defense counsel's decision. That's a decision for the defendant to make because it carries very important consequences for the defendant. He is being exposed to liability on a charge that the state hasn't brought. And in this case it's a charge that carries a significant amount of prison time. So when defense counsel is the party that requests that instruction, it's up to defendant to make that decision and the judge has an obligation to ensure that the defendant has done so and has done so with knowledge of the consequences. If the judge himself is the only party that wants to give the instruction, then there would be no reason to admonish the defendant. If I can address plain error again, as I said, we have a case in which the state's evidence consisted primarily of the defendant's confession. And that was a confession taken from a man who is mentally retarded and reads at a first grade level. He has an IQ of 67 and he was interrogated for two days before an unsigned statement was taken from him. That's a case where the confession doesn't provide overwhelming evidence of his guilt. We do know that there is a history of people confessing falsely and that's a particular risk when you have someone who is mentally retarded and susceptible to coercion. So the evidence here was closely balanced. The question then becomes whether the error that occurred in failing to question Lamar affected the outcome of the trial. And the reason that it does is because Lamar had a strong defense to first degree murder, counsel undermined that defense by then in closing argument, at near the very end of closing argument, arguing to the jury that if they found that Lamar was guilty of committing the shooting, they should only find him guilty of second degree murder. This was an argument that was factually inconsistent with everything counsel had argued before and the message that that sends to the jury is that counsel wasn't very convinced by his primary argument that Lamar was not guilty. It also opened the door for the state in closing argument to just hammer home that impression and to tell the jury that the defense theories of the case were inconsistent and therefore should be rejected. So for those reasons, we believe this is reversible under the plain error doctrine. If your honors have no questions about that issue, I'll move briefly to real questions. Going back to Medina, Medina, where I think we said that the decision of whether to request a lesser included instruction is inextricably woven with the trial tactics, the trial strategy and the court should be careful in inserting itself into that process. But in that case, it was truly a lesser included offense where the defendant is subject to being convicted of something for which he was not charged. Here, although you pointed out why you think it's just as bad, here, though, the state has to prove all of the elements of first degree murder before it even gets to the second degree. That's correct. In Medina, if the state couldn't meet all of the elements for the crime charged, the defendant would be subject to being convicted of something that had a lesser degree or lesser elements. So there is, it seems to me, a greater exposure and that's a difference. How do you respond to that? Well, I think the exposure is actually greater because second degree murder includes all of the elements of first degree murder. As this court said, submitting an instruction on a lesser offense can effectively concede guilt. So if the defendant is submitting an instruction on a lesser offense... But the jury doesn't know where the court's instructions, so there's no concession as far as the jury is concerned, is there? I think then you have to look at what happens in closing argument. And that's where, if you look, you know, as a practical matter, at what the effect of requesting the instruction and then arguing it, the defendant, his ability to defend against first degree murder is damaged in a case like this because the alternative arguments presented by counsel undercut the defense to first degree murder. I think that's where the prejudice comes in. So that's where a defendant would acknowledge the elements but say there's the additional mitigating factor? Right. That's correct. As to Fourth Amendment B, I'll talk about that briefly. Here we also primarily are talking about plain error. It's clear under this Court's decision in People v. Thompson that an error occurred here because the trial judge did not question the prospective jurors about whether they understood and accepted that Lamar had a right not to testify, and that if he chose not to testify, they couldn't hold it against him. That error is clear. The question then becomes whether it's reversible under the closely balanced prong of plain error. Here, the reason that it is, I've talked about why the evidence was close. The reason that this error could have affected the outcome of trial is because Lamar exercised the very right that the judge failed to question the jurors about. He didn't testify. He chose not to testify. And testimony by Lamar could have been very important in this case because the State's evidence depended so heavily on the statement that Lamar allegedly made to the police. Lamar, testimony by Lamar himself would have been the best source of evidence for the defense about the reliability of that confession. So if there's ever a case in which a jury needs to be, in which we need to be sure that the jury accepts that the defendant has a right not to testify, it's a case in which the defendant's testimony could have such a strong bearing on what the outcome of trial would be. The State has argued that a defendant must show that a juror actually was biased to obtain reversible under the closely balanced prong of plain error. The problem with that argument is that's the exact same showing that's required by this court under the other prong of plain error. This would essentially collapse both prongs of plain error. It would also leave the defendant with no effective way to obtain reversible for a 431B violation. As a practical matter, the only way to determine whether a juror is actually biased against the defendant's right not to testify or any other principle that is enumerated in Rule 431B is to actually question the jurors about it during voir dire. If the judge doesn't comply with the rule, then that error itself has effectively denied us of the record that we need to show that the error is reversible. So for those reasons, we would ask that this court reverse the decision of the appellate court, reverse Lamar's convictions and remand his case for a new trial. I'd like to ask one additional question going back to the, if your argument is that the defendant in requesting a murder to instruction in effect concedes the killing or the elements of murder are proven, isn't the defendant in requesting a self-defense instruction conceding at least the next step, then do we need to tell the trial court you're going to have to get the defendant's consent to giving a self-defense instruction? I don't believe so, Your Honor. This court held in People v. Ramey, which was shortly before Brocksmith, that a defendant is not permitted to decide whether to submit an instruction on self-defense. That is a matter for defense counsel. And I think the important dividing line between second-degree murder and self-defense is that when a defendant requests an instruction on self-defense, the defendant, that is an actual, if that defense is successful, the defendant will be acquitted. The defendant isn't being exposed to liability on an additional uncharged offense when he raises that defense. He may be admitting to perhaps his identity as the shooter, but he's not actually being exposed to a conviction on a second-degree murder. I think that's the clear distinction here between self-defense and second-degree murder. Thank you, Your Honors. Thank you, Mr. Cook. Counsel for the appellee. Good morning, Your Honors. May it please the Court, my name is Jessica Ball, Assistant State's Attorney on behalf of the People. Your Honor, the defendant is asking for an expansion of the holding in Brocksmith. And the basis for his argument is that the tendering of a second-degree murder jury instruction is tantamount to a guilty plea to first-degree murder. But that premise is not correct, and I'll explain why in just a moment. As a threshold matter, we'd like to clarify that the People did not misrepresent the record when we argued that the trial court may have sua sponte tendered the second-degree murder jury instruction. The only language that was omitted from the State's brief related to defense counsel's request for that instruction. But that's no surprise. The whole reason we're here is because the defense requested that instruction. What was relevant in the record, and what was contained in our brief, is that the trial court also requested that instruction separately and apart from defense counsel's request. And while the record is certainly open for interpretation, a fair interpretation, and one that's fully supported by the record, is that the trial court was inclined to tender that instruction sua sponte. What's also important, and brings us back to the basis for the defendant's argument to expand Brocksmith, is that the defendant was not found guilty of second-degree murder. Therefore, he can't argue that the tendering of a second-degree murder jury instruction is tantamount to a guilty plea to that charge. What he's left to argue, the only thing he can argue, is that the tendering of a second-degree murder jury instruction is tantamount to a guilty plea to first-degree murder. That's the basis for his entire argument, and it's entirely untrue. Brocksmith held that the tendering of a lesser-included offense instruction was tantamount to a guilty plea to that lesser charge. It did not hold that the tendering of a lesser offense instruction was tantamount to a guilty plea to the greater charge. And second-degree murder is not a lesser-included offense of first-degree murder, and it shouldn't be treated the same. Brocksmith was concerned with the situation where the defendant is being exposed to additional criminal liability. That is what happens when a lesser-included offense instruction is given. A decision is made to absolve the state of its burden of proving the defendant guilty on the greater offense. The jury is given the option of finding the defendant guilty on either the greater or the lesser. In fact, the jury can completely disregard or discard that greater offense. That's not what happens with second-degree murder. The defense does not make a decision to absolve the state of its burden of proving the defendant guilty of first-degree murder, and the jury certainly can't ignore first-degree murder. They have to first find him guilty of that offense before they ever get to second-degree. And consider the verdict forms. When a defendant tenders a lesser-included offense, the jury gets a verdict form that reads not guilty of the lesser. So clearly they can consider the lesser offense separately from the greater offense. Again, that doesn't happen with second-degree murder. The jury does not get a verdict form that reads not guilty of second-degree murder, because if he's found not guilty of first-degree murder, it ends there. They never get to second-degree. And if you consider the elements of the offenses, a lesser-included offense absolutely has fewer elements than the greater offense. Again, not the same for second-degree murder. The state still has the burden of proving every element of first-degree murder beyond a reasonable doubt, and then has the additional burden of disproving the mitigating factors of second-degree. So obviously the tendering of a second-degree murder jury instruction does not concede guilt to any charge, first- or second-degree murder. Especially not in this case where defense counsel argued that the state did not prove first-degree murder beyond a reasonable doubt. And to be clear, defense counsel did not argue for or pursue second-degree murder. That's a common theme that appears throughout the defendant's briefs, but it's not true. What defense counsel argued is that the state did not prove first-degree beyond a reasonable doubt, primarily because he argued the defendant's statement was not reliable. After that, what he did once, and just briefly, was set in effect. When you hear about second-degree murder, it's not because we're asking you to do that. It's because if you choose to believe that crazy story that's in the defendant's statement, at best it's second-degree. And the defense attorney had to say something about that instruction because the jury was getting it anyway. Counsel will suggest that the prejudice here is not in the fine line of difference between lesser included and second-degree, but rather the manner in which the state argued these two charges to the jury, saying that obviously defense counsel doesn't have confidence in the self-defense, something along those lines. I've not seen the record yet, but can you address the closing argument? Well, the state, both parties had to address second-degree murder because the jury was getting that instruction anyway. The record indicates that the court was inclined to give that instruction and indicated a few days before closing arguments that he was going to do so. So that argument, that issue and charge needed to be addressed. But what I believe the defense argues is that the prejudice resulted from the effectiveness of his reasonable doubt argument being diminished because defense counsel pursued second-degree murder. But defense counsel didn't pursue second-degree murder. He mentioned it briefly. He said it wasn't what they were asking for, and again, he had to mention that. It wasn't inconsistent with his other argument at all. Did the state argue that the jury should infer some concession by the defense because of the second-degree instruction? Not that I recall seeing that that's what the state argued, no. And again, what I take from the defendant's brief is that the prejudice came from his counsel arguing for second-degree, which is not what happened in this case. Just boiling this down to its simplest proposition, what about the argument that the defendant is exposed to additional criminal liability and that should be something that he or she should decide? Our position is that when it's a second-degree murder jury instruction, he's not exposed to that additional criminal liability, because he's not discarding that primary, the greater offense. He's not conceding guilt to anything. What he's doing is that the state still has to prove all of those elements of first-degree murder. It goes back to your argument that if it was first-degree, he'd have to be proven guilty of first-degree in the first instance. Absolutely. It doesn't diminish the state's burden of proving that greater offense, and that is a distinction between a lesser-included and a lesser-mitigated offense. The defendant argues also that we can't compare the tendering of a self-defense instruction and the tendering of a second-degree murder jury instruction. He says the two are totally unrelated. But that argument really doesn't work after Washington, where this Court held that the second-degree instruction naturally flows from self-defense. So it is inconsistent to say that defense counsel can choose to pursue a theory of self-defense, even against the defendant's wishes. That comes from Ramey. But the defendant must choose whether or not to tender a second-degree murder jury instruction, even though it's a mandatory counterpart to a strategic decision to pursue self-defense. So it becomes difficult to harmonize Brocksmith with those decisions, especially since post-Brocksmith this Court also held in Medina that the tendering of a lesser-offense instruction is part of trial strategy. So with all due respect to stare decisis, given that the defendant is asking to expand Brocksmith, we believe it's a good opportunity to re-evaluate that decision. And our position is that the rationale that was employed in Brocksmith was not correct. We believe that the more appropriate legal framework to address the issue is through the Sixth Amendment, as suggested by Justice Freeman in his concurrence, because the tendering of a lesser-included offense instruction is not analogous to a plea of guilty. When a defendant pleads guilty, he waives all of his trial rights. But tendering a lesser-included offense instruction does not admit guilt. The defendant can still maintain his innocence, he can still argue for acquittal, and he can still be found not guilty of that lesser offense. And it's important to remember the facts of Brocksmith before expanding that decision. The statute of limitations had run on that lesser offense, so the tendering of that lesser instruction was like conceiving guilt on a charge that the State could never prove. But that was an anomaly, that's not typically what happens when a lesser offense instruction is tendered. And it's also important to note that the right to a lesser-included offense instruction is not like the other rights exclusively belonging to the defendant. None of those other rights can ever be mitigated by State or court action, yet the State can request a lesser offense and the court can give one sua sponte even over the defendant's objection. We do believe that the decision to tender a lesser offense instruction should belong to the attorney, that it's a matter of strategy, and if there's an error, that it would best be remedied through the Sixth Amendment. Assuming this Court is not inclined, however, to re-evaluate Brocksmith, we ask that you not expand it either, because second-degree murder is not equivalent to, nor should it be treated the same as, a lesser-included offense. However, addressing the defendant's plain error argument, even if Brocksmith does apply to second-degree murder, the defendant forfeited this claim and it should not be considered under either prong of plain error. First, there's no showing that a Brocksmith error occurred. The record is silent and the defendant should not benefit from that fact. All he can show is that the trial court did not ask if he agreed with the instruction. But the failure to ask that question does not mean that the defendant did not ultimately decide to tender that instruction. And you cannot grant relief, the defendant's relief for a new trial, without showing that a Brocksmith error occurred. If that's really his position, that his decision was undermined, then the issue is better addressed through a post-conviction petition. That's how it was done in Brocksmith. The defendant provided affidavits from himself and from his attorney that said that the attorney made the ultimate decision, and the State conceded that point. Here, there's no affidavits and the State is not conceding anything. So if there's an error, it's a Medina error, not a Brocksmith error, and it's still not reviewable under the plain error doctrine. First of all, there is absolutely no prejudice here. The defendant was not found guilty of second-degree murder, and even if he had, the trial court would have tendered that opinion. We went back to the defendant's arguing that his prejudice is because his argument was, the effectiveness of his argument was diminished because defense counsel pursued second-degree murder. But again, that's a false statement. Defense counsel did not pursue that offense. And the evidence was not closely balanced here. The evidence of the defendant's guilt of first-degree murder was compelling, so any error in instructing on second-degree murder could not have tipped the scales. The defendant injected himself into this investigation, he went to the police with information about this crime. Then he repeatedly admitted that he killed the victim, explaining that he shot him twice in the head, and then put his body in the garbage can. That statement is corroborated by the fact that the victim's body was found in that garbage can with two gunshot wounds to the head. And the autopsy revealed abrasions to his back, which were consistent with being dragged on the sidewalk as the defendant said that he did. This is compelling evidence that the defendant, and not someone else, killed the victim. As for the defendant's statement and the reliability thereof, the trial court found the defendant's statement to be reliable, and the defendant does not contest that ruling on appeal. To summarize, Your Honors, with respect to this first issue, there are multiple reasons to affirm the defendant's convictions. Primarily, it's because Brocksmith and Medina do not apply to second-degree murder. In the alternative, even if Brocksmith and Medina do apply, the defendant forfeited this claim, and it should not be considered under either prong of plain error. Lastly, we believe that Brocksmith should be re-evaluated before moving forward, especially in light of the defendant's request to expand that decision. With respect to the defendant's Rule 431B argument, in this case the trial court repeatedly advised the jury of the defendant's right not to testify. He did so at the beginning of Wardeer. He also explained it as one of the defendant's rights not to have to present any evidence, and then asked them if they understood and accepted that right, which in essence incorporated the defendant's right not to testify, and then the trial court properly instructed the jury on the defendant's right not to testify at the close of the case. Despite all of this, the defendant claims that he gets a new trial simply because the evidence regarding the reliability of his statement may have been close. But this Court cannot reverse and remand for a new trial without an affirmative showing of prejudice. This Court has said that the entire purpose of plain error is for the defendant whose conviction resulted from the error, not the jury, to be totally unrelated to the error that's been alleged. Instead, the defendant has to show some prejudice resulting from the error. That's prong one plain error. In this case, the error involves how the jury weighed the evidence, so the prejudice would be a biased jury. There needs to be an affirmative showing that the jury failed to follow the omitted Rule 431B admonishment. Was the jury persuaded by that error and not the evidence? That's the question. And that's the defendant's burden. Whether it's a difficult burden or not depends on the case at hand. Here, the defendant argues that the fact that he didn't testify should be enough to satisfy his burden. But it's not, because there's no indication that the error in the trial court failing to ask whether the jury understood and accepted that right actually affected the way that the jury weighed and considered the evidence. The best the defendant can do is say that the jury may have held his failure to testify against him, even though they were strictly instructed not to do so and the jury is presumed to follow the laws that's given to them, and even though the defendant cannot point to anything in the record to support his claim, it's all speculation. And his speculative claim cannot carry the day, especially where he forfeited the issue, the jury was properly instructed, and the jurors said that they could be fair. Given that the defendant has not met his burden, we respectfully request that you affirm his convictions. Thank you. Thank you, Ms. Ball. Mr. Cook? I'll just make a few brief points in rebuttal, Your Honors. I think most of the things we had already addressed in the first part of the argument. One thing we didn't address is whether Brocksmith and Medina should be overruled. Those, Brocksmith has been part of the law now for almost 20 years. It hasn't led to a lot of unworkable disputes on appeal. It's very simple to follow, it and Medina both. The rules are simple, they're workable, and they haven't proved otherwise. So we believe that those decisions should be affirmed. I would also point out, the state also argues that we can't show prejudice because we can't show Brocksmith error, because there's no evidence one way or the other whether defendants agreed with counsel's decision to present the position is that it would essentially leave no remedy for Medina. If a defendant can show that he didn't make the decision to tender an instruction, then as counsel admitted, that would be error under Brocksmith. If defendant has to make the same showing when the judge violates Medina, then the fact of admonishing or not admonishing becomes inconsequential to whether or not error occurs, becomes inconsequential to whether the defendant is entitled to a sentence. So there wouldn't be superfluous to Brocksmith, and there wouldn't be any independent force to Medina if that were the rule. As to 431B, I would ask just a couple points about the evidence. The state pointed out some things that purportedly corroborate the statement to the police, such as the nature of the decedent's wounds and the location of the body. The problem is that all of those facts were known to the police long before Lamar allegedly confessed. The autopsy, the autopsy report, the autopsy report, the autopsy report was done about three months before his interrogation. So the police would have known the results of that autopsy. They would have known the nature of the wounds. The state also points out that the trial court says that the trial court found the statement to be reliable. And it's true that the trial court did hold in a pretrial motion that the statement was admissible because it was voluntary. There was no Miranda violation. There was no violation of the Fourth Amendment. But the jury still has an independent obligation and an independent right to determine whether or not a statement would be reliable. And here there was a lot of evidence to show that it wasn't. There may have been some evidence to corroborate the confession, but when we're asking whether a case is closely balanced, it's not whether there's some evidence to support the state's side. It's whether that evidence is also balanced by some evidence in support of the defense position. And here there was a lot of evidence, particularly Lamar's mental retardation, the fact that there was no physical evidence such as DNA, fingerprints, or anything of that sort, or any eyewitness testimony to corroborate the statement. As to 431B, again, the state believes that there should be an affirmative showing of bias by the jury against the right not to testify. But as we've pointed out in our reply brief, really the only way for the defendant to show that bias is through compliance with the law, whether they understand and accept that a defendant has a right not to testify, we'll never know whether they're biased or not. So if the defendant has to make that near-impossible showing, there essentially would be no remedy for any violation of 431B. This court has repeatedly said that its rules are meant to be followed. They have the force of law and they aren't suggestions. But if a rule has no remedy as a practical matter, then that rule truly ceases to have the force of law. So for those reasons, I think it's important to understand that there is no remedy for any violation of 431B. And I think that's a good point. Thank you. I have one additional question, Counselor. There was some, perhaps, disagreement as to whether or not the court was going to give it to Sua Spadi. And I was looking at your reply brief, page 3, where you include some of the colloquy. And it seemed to indicate we could make a finding that the trial court requested the murder to instruction be prepared. If we find that the trial court was going to, based upon the record that the trial court was going to give it to Sua Spadi, is that the end of the case as far as you're concerned? If the trial court... I mean, if it's clear. If it's clear, then yes, I believe. If the trial court wants to give an instruction to Sua Spadi, then there's no obligation to admonish. But here, I think it's absolutely clear the other way. Whenever the trial court talked about giving an instruction on second-degree murder, whenever the trial court talked about the State preparing that instruction, the trial court placed that in the context, quite specifically, that the defense, that the trial judge was doing that because the defense was requesting that instruction. The trial court never said, I would give this instruction even if the defense were not requesting it. And one other question in response to the State's argument that this should be more properly raised in a post-conviction proceeding. I think the wisdom of Medina is that it allows for these factual disputes to be resolved at the time of trial. It creates a contemporaneous record of who made the decision, whether the defendant was properly advised. It obviates the need to then have further litigation about that issue in post-conviction petitions. And that's just another reason to affirm the decision in Brocksmith, or I'm sorry, in both Brocksmith and Medina, is that it's much better to resolve these issues at trial rather than to then have to have evidentiary hearings to determine if defendant, if he makes an allegation in a post-conviction petition that he was never, that he and counsel never talked about this, that's going to require an additional hearing and then a few questions during a jury instructions conference. If you're under 7-0 for the questions, we'd again ask that you reverse the convictions or amend for a new trial. Thank you. Case number 112938, People v. Lamar Wilmington, is taken under advisement as agenda number 2. Mr. Cook, Ms. Baldwin, thank you for your arguments today.